EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA  90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
eugene.volokh@gmail.com

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOE PUBLIUS and DEREK HOSKINS,<br><br>Plaintiffs,<br><br>v.<br><br>DIANE F. BOYER-VINE, in her official capacity as Legislative Counsel of California,<br><br>Defendant. | Case No.: 1:16-CV-01152-LJO-SKO<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR PERMISSION TO ALLOW PLAINTIFF DOE PUBLIUS TO PROCEED PSEUDONYMOUSLY**<br><br>Hearing Date:  April 27, 2017<br>Hearing Time: 8:30 a.m.<br>Judge:   Hon. Lawrence J. O'Neill<br>Courtroom 4, Seventh Floor<br>Action Filed: Aug. 5, 2016 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

    A.    Publius Blogs Anonymously About California Politics On A Site With A Growing Audience .......................................................... 2

    B.    The State Issued Multiple Demands That Publius' "Tyrant Registry" Post Be Removed From The Internet ....................... 3

    C.    The State Now Demands That The Court "Out" Publius ...................... 4

III.  ARGUMENT ................................................................................................................. 4

    A.    Publius Has A Compelling Need For Anonymity ................................. 4

    B.    The Public Interest Strongly Favors Allowing Publius To Proceed Anonymously ........................................................................ 8

    C.    Publius' Anonymity Does Not Prejudice The State's Defense ............ 10

IV.   CONCLUSION ........................................................................................................... 12

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF REQUEST TO PROCEED ANONYMOUSLY
-i-

# TABLES OF AUTHORITIES

**Cases**

*Buckley v. Am. Const. Law Found.*,
   525 U.S. 182 (1996) .................................................................................................... 3

*Doe v. Del Rio*,
   241 F.R.D. 154 (S.D.N.Y. 2006)) ................................................................................ 7

*Doe v. Madison Sch. Dist. No. 321*,
   147 F.3d 832 (9th Cir. 1998) ....................................................................................... 6

*Doe v. Porter*,
   370 F.3d 558 (6th Cir. 2004); ............................................................................. 5, 6, 8

*Doe v. Provident Life & Acc. Ins. Co.*,
   176 F.R.D. 464 (E.D. Pa. 1997) ............................................................................. 7, 9

*Doe v. Stegall*,
   653 F.2d 180 (5th Cir. 1981) .............................................................................. 5, 6, 8

*Does I thru XXIII v. Advanced Textile Corp.*,
   214 F.3d 1058 (9th Cir. 2000) ............................................................................ *passim*

*Free Speech v. Reno*,
   1999 WL 47310 (S.D.N.Y. 1999), ..................................................................... *passim*

*In re Anonymous Online Speakers*,
   661 F.3d 1168 (9th Cir. 2011) ..................................................................................... 7

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*,
   596 F.3d 1036 (9th Cir. 2010) ..................................................................................... 8

*McIntyre v. Ohio Elections Commission,*
   514 U.S. 334 (1995) ................................................................................................ 6, 8

*Reno v. Am. Civil Liberties Union*,
   521 U.S. 844 (1997) .................................................................................................... 2

*Sealed Plaintiff v. Sealed Defendant,*
   537 F.3d 185 (2d Cir. 2008) .................................................................................... 7, 9

*Southern Methodist Univ. Ass'n v. Wynne & Jaffe,*
   559 F.2d 707 (5th Cir. 1979) ....................................................................................... 5

*Talley v. California*,
   362 U.S. 60 (1960) ...................................................................................................... 6

**Statutes**

Cal. Elec. Code § 2194(a)(3). ............................................................................................ 11

Government Code section 6254.21 ............................................................................. 1, 10

# I.
# INTRODUCTION

This motion to allow Publius to continue prosecuting this case anonymously appears to be necessary because of the State's frustration at losing the preliminary injunction motion.  The State had four months' notice that Publius would file a motion for preliminary injunction in December 2016, which the State would have to oppose in January 2017.  The State never once claimed that it would be prejudiced in defending that motion without knowing Publius' identity.  Nor could it, given that the material factual issues here are not in dispute.  The only questions are whether Government Code section 6254.21(c) is unconstitutional on it face and as applied to plaintiffs; Publius' identity does not bear on either of those questions.  Now, after the Court has found that Publius and co-Plaintiff Derek Hoskins are likely to prevail because section 6254.21(c) is unconstitutional as applied to them, the State objects to Publius' anonymity.

A party may proceed anonymously if its need for anonymity outweighs (1) prejudice to the opposing party and (2) the public's interest in knowing the party's identity. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).  As shown below, the circumstances of this case strongly favor Publius' anonymity.  In particular:

- Publius brings this First Amendment challenge with an established history of anonymous political blogging, and Publius has taken multiple steps to preserve anonymity in that context.  The courts have long recognized the importance of anonymity in political speech, and they have likewise recognized that First Amendment plaintiffs should not have to choose between surrendering their anonymity and vindicating their First Amendment interests in litigation.

- The "public interest" in knowing the identity of parties drops dramatically when, as here, the government is a party defending government action.  Moreover, the "public interest" analysis focuses on whether anonymity obstructs the public's ability to follow the issues in the case.  Where, as here, the case turns on legal issues applied to undisputed facts, the public's ability to follow the litigation is not hindered in the least.  As detailed further below, it appears that the State is interested in identifying Publius so his or her name can be dragged through the mud.  That is precisely contrary to the public interest, which is served by encouraging persons expressing

minority viewpoints to vindicate their First Amendment rights.

• The State is not prejudiced by Publius' anonymity. That the State litigated the preliminary injunction motion without ever arguing it needed to know Publius' identity demonstrates that Publius' continuing anonymity is not prejudicial: the issues at the permanent injunction stage remain exactly the same as they were at the preliminary injunction stage. In the wake of the preliminary injunction ruling, the State has failed to identify any discovery it needs that requires Publius' identification.

The motion should be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.   Publius Blogs Anonymously About California Politics On A Site With A Growing Audience.**

Plaintiff Doe Publius maintains a political blog on the Internet under the alias "The Real Write Winger." Publius started blogging at therealwritewinger.wordpress.com in May 2016. The blog focuses on California politics, with a particular emphasis on criminal law, civil rights and liberties, and the right to keep and bear arms secured by the Second Amendment to the U.S. Constitution. Publius Decl., ¶ 2.

As the Supreme Court predicted in the early days of the Internet, bloggers like Publius "can become a town crier with a voice that resonates farther than it could from any soapbox." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997). Publius has developed a substantial following. In the ten months since starting the blog, more than 69,000 unique users have visited the site, yielding more than 90,000 page views. Publius' posts have been accessed by online readers in 89 different countries. Publius Decl., ¶ 2.

In order to focus readers on the message—and out of fear of reprisal for being an outspoken advocate for Second Amendment rights, given the current environment in California— Publius has taken multiple steps to preserve anonymity. Publius has refrained from ever posting anything at therealwritewinger.wordpress.com site that reveals his or her personal identity. Publius uses a separate email address for blog-related business, with "Write Winger" appearing as

Publius' name in the "to" or "from" lines.  Publius has used the "Write Winger" name in all dealings with Wordpress, the web hosting service.  *Id*. ¶ 3.

Finally, Publius makes no money from operating the blog.  The site has no advertising and charges no fees of any kind.  *Id*. ¶ 4.

**B.    The State Issued Multiple Demands That Publius' "Tyrant Registry" Post Be Removed From The Internet.**

In July 2016, Publius posted a blog entry criticizing the California Legislature for passing several laws that Publius believes undermine the rights of California gun owners, including a law establishing a registry tracking all ammunition purchases and transfers.  Publius characterized state lawmakers as "tyrants" and announced the establishment of a "tyrant registry" that listed the home addresses and telephone numbers of 40 legislators who voted to pass the bills Publius was protesting.

In response to the post, the California Legislative Counsel sent a written demand to WordPress.com (the Internet hosting service for Publius' blog), threatening to pursue a lawsuit if WordPress did not remove the post pursuant to California Government Code section 6254.21(c).  In response to the State's demand and threat of litigation, WordPress disabled Publius' post and removed it from the Internet.  As detailed in the preliminary injunction papers, the State issued multiple similar demands to individuals who reposted some or all of the information on different Internet sites, including one demand sent to Plaintiff Derek Hoskins in New England.  Plaintiffs filed a complaint for declaratory and injunctive relief alleging that Section 6254.21(c) is unconstitutional, and on December 15, 2016, Plaintiffs filed for a preliminary injunction.  Dkt. 19.

On February 27, 2017, this Court issued an order granting Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs are likely to succeed on their claim that the statute is unconstitutional as applied to them.  Dkt. 24.  In doing so, the Court recognized that Plaintiffs' speech is "political protest, which is 'core political speech,' with First Amendment protection 'at its zenith.'"  Dkt. 24, 16:12–13 (quoting *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 186–87 (1996)).

///

**C.     The State Now Demands That The Court "Out" Publius.**

In its opposition to the preliminary injunction motion, the State complained that Publius had not already been unmasked and argued that Publius' anonymity precluded *any* relief being granted.  *See* Dkt. 20, Opp. to Mot. For Prelim. Inj., 6 n.6.  But the State did not claim it was prejudiced by Publius' anonymity.  When asked to explain why it needed Publius' identity in order to defend the case now, after vigorously defending the preliminary injunction, the State's lawyer said the State wanted to know, for example, whether Publius had "multiple felonies" or "assassination attempts."  Duvernay Decl., ¶ 3.  The State also claims Publius should be deposed to probe his or her background and "credibility," *id.*, Ex. 2, while failing to identify any disputed facts where such background and credibility could make a difference in the outcome.

### III.

### ARGUMENT

Publius should be permitted to prosecute this case anonymously.  The Ninth Circuit has stated that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs [1] prejudice to the opposing party and [2] the public's interest in knowing the party's identity."  *Advanced Textile*, 214 F.3d at 1068.[1]  In the context of a First Amendment claim against the government that turns on the application of a statute to a public writing, the test is not difficult to pass.

**A.     Publius Has A Compelling Need For Anonymity.**

Speaking out against the government, and against the government's popular policies, is often fraught with the risk of social and economic retaliation, and of governmental harassment.  Such risk of "harassment, injury, ridicule or personal embarrassment" is sufficient to justify allowing plaintiffs to proceed anonymously.  *Advanced Textile*, 214 F.3d at 1068.  Publius'

---

[1] *Advanced Textile* added that, "where pseudonyms are used to shield the anonymous party from retaliation, the district court should determine the need for anonymity by evaluating" the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation." *Id.*; *see also Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) (combining *Advanced Textile* formulation into five factors).

blogging has already led to messages from third parties that suggest that revelation of his identity could lead to such retaliation.  *See* Publius Decl. at ¶ 5[2]; *Doe v. Stegall*, 653 F.2d 180, 183 n.6 (5th Cir. 1981) (allowing plaintiffs to proceed anonymously, based in part on public statements made at a school board meeting, including "God is fixing to come back. He'll show them [plaintiffs]," and "We have got to band together and whop this evil thing, . . . God says we can."); *Advanced Textile*, 214 F.3d at 1062 (allowing foreign workers bringing Fair Labor Standards Act claim to proceed anonymously, based on their fear of losing jobs and being deported back to China).  Publius works as an employee for a large, publicly-traded company.  Based on Publius' knowledge of this employer's political sensitivities, Publius believes his or her employment would be terminated if persons opposed to Publius' lawsuit were to publicly criticize the employer for its association with Publius.  Publius Decl., ¶ 6.

     Moreover, plaintiffs are often entitled to proceed anonymously when they are challenging the constitutionality of a law, and the challenge discloses that they might have violated that law or were intending to do so.  *See, e.g.*, *Advanced Textile*, 214 F.3d at 1068 (citing challenge to then-existing ban on homosexual conduct); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Southern Methodist Univ. Ass'n v. Wynne & Jaffe*, 559 F.2d 707, 713 (5th Cir. 1979) (citing noted anonymous litigant cases involving abortion rights, homosexual conduct, and then-criminal fornication).  Publius would prefer *not* to violate the law, which is the reason for filing this challenge now, rather than waiting to be sued.  But the State itself has argued against this course of action, claiming (wrongly, in our view) that Publius lacks standing *until* he or she is sued for violating the law.  Now, the State not only wants to throw out Publius' current challenge, but to force Publius' identity to be revealed, so that it could more effectively penalize Publius (via potentially tens of thousands of dollars in attorney fees) in the event that it prevails against a later

---

[2] These have included:
- "Why don't you post your real name and address you fucking coward?"
- "Because you're a scared lil bitch. Internet warrior."
- "Stop being an asshole.  And stop hiding behind a pseudonym like a coward.  What's your address?"
- "Or you could post yours, I want to come over and talk."

Publius Decl., ¶ 5 and Ex. 1.

challenge. That cannot be right.

Judge Mukasey's opinion in *Free Speech v. Reno*, 1999 WL 47310 (S.D.N.Y. 1999), is instructive here. Plaintiffs engaged in unlicensed radio broadcasts by an operation named "Steal This Radio." They brought a facial and as-applied challenge to FCC licensing regulations and sought permission to proceed anonymously under their broadcast names rather than their personal names. To deny plaintiffs "permission to proceed by pseudonym would either expose plaintiffs to further penalties and prosecution or, more likely than not, *discourage them from pursuing their constitutional challenge*." *Id*. *3 (emphasis added). "[S]uch exposure is not required," the court concluded, when "the public interest in knowing the facts does not demand otherwise." *Id*.

The courts also regularly allow plaintiffs to proceed anonymously in the Establishment Clause setting, because many such plaintiffs, merely "by filing suit, [have] made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 186; *Doe v. Porter*, 370 F.3d at 560 (citing *Stegall* language in Establishment Clause claim); *Doe v. Madison Sch. Dist. No. 321*, 147 F.3d 832, 833 n.1 (9th Cir. 1998) (plaintiff bringing Establishment Clause claim "feared retaliation by the community"), *vacated on other grounds*, 177 F.3d 789 (9th Cir. 1999) (en banc), *favorably cited by Advanced Textile Corp.*, 214 F.3d at 1067 (citing panel decision's language as an example of when the Ninth Circuit "allow[s] parties to use pseudonyms").

In the context of political speech, of course, the First Amendment *already* protects Publius' right to speak anonymously when criticizing the government. As the Supreme Court explained in *McIntyre v. Ohio Elections Commission*, there is a "respected tradition of anonymity in the advocacy of political causes." 514 U.S. 334, 343 (1995). "Under our Constitution, anonymous [political advocacy] is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority." *Id.* at 357.

"[F]rom time to time throughout history," persecuted groups "have been able to criticize oppressive practices and laws either anonymously or not at all." *Id.* at 342 (quoting *Talley v. California*, 362 U.S. 60, 64 (1960)). Such anonymous political speech "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular

individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society."[3] *Id.* at 357. Accordingly, "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *Id.* at 342.

This freedom extends to speech published on the Internet. "Although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech. As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citations omitted).

That Publius has taken steps to protect his or her anonymity—far beyond proceeding anonymously here—further weighs in favor of allowing Publius to maintain that anonymity. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) ("whether the plaintiff's identity has thus far been kept confidential" is a factor) (citing *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006)); *Free Speech*, 1999 WL 47310 *2 ("[s]ome additional factors that courts have found persuasive deciding whether to allow plaintiffs to proceed pseudonymously include the 'extent to which the identity of the litigant has been kept confidential'") (citing *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D Penn. 1997)). Publius has kept his or her *personal* identity entirely separate from the "Write Winger's" expressive identity.

Being forced to publicly disclose Publius' identity would eliminate Publius' right to *continue* engaging in anonymous political speech. That may be the most compelling threat here.

---

[3] The right to remain anonymous is not dependent on the threat of persecution or retaliation. In *McIntyre*, the Supreme Court explained that speakers may choose anonymity for any number of reasons: "On occasion, quite apart from any threat of persecution, an advocate may believe her ideas will be more persuasive if her readers are unaware of her identity. Anonymity thereby provides a way for a writer who may be personally unpopular to ensure that readers will not prejudge her message simply because they do not like its proponent. Thus, even in the field of political rhetoric, where 'the identity of the speaker is an important component of many attempts to persuade,' the most effective advocates have sometimes opted for anonymity." 514 U.S. at 342–43 (citation omitted).

Indeed, one commenter to an online *San Francisco Chronicle* story about the case summarized the dilemma perfectly: "Why don't they just publish this guy's home address and personal data? Seems like a good way to stop that." Comments, Bob Egelko, *Court sides with gun blogger who posted officials' contact info*, S.F. Chronicle, Feb. 27, 2017, Duvernay Decl., Ex. 3 at p. 3.[4] (This opponent of Publius' anonymous First Amendment activity identified himself (or herself) only as "Ranting__Reader.") Yet cases such as *McIntyre* and *Advanced Textile* make clear that the government cannot try "to stop that"—to stop people from exercising their rights—by demanding that they identify themselves and face harassment for exercising those rights.

Finally, Publius does not operate the "Real Write Winger" blog for commercial gain (even though anonymity is available even in actions related to commercial activity, *cf. Advanced Textile*, 214 F.3d at 1062–65 (allowing anonymous workers to proceed with collective action under Fair Labor Standards Act on behalf of similarly-situated workers and other workers were also allowed to opt into class under seal)). Rather, Publius blogs to speak out about California politics and policy—that is, solely to exercise First Amendment speech rights.

**B.     The Public Interest Strongly Favors Allowing Publius To Proceed Anonymously.**

The presumption that parties must use their real names in litigation arises out of the "right of *private individuals* to confront their accusers." *Kamehameha*, 596 F.3d at 1042 (emphasis added). That interest does not exist here, as the State is the only defendant: Ms. Boyer-Vine is named in her official capacity as the Legislative Counsel. As Judge Mukasey recognized in *Free Speech*, 1999 WL 47310, *2, "[t]he fact that the defendants are government entities rather than private defendants is significant because governmental bodies do not share the concerns about 'reputation' that private persons have when they are publicly charged with wrongdoing." Indeed, multiple decisions demonstrate that challenging the constitutionality of government activity is itself a factor that cuts in favor of preserving a litigant's anonymity. In *Doe v. Stegall*, which the Ninth Circuit cited repeatedly in *Advanced Textile*, 214 F.3d at 1067–69, the Sixth Circuit said that one of the primary factors to consider is whether "plaintiffs seeking anonymity were suing to

---

[4] The "Comments" page can be accessed online at http://bit.ly/2mQjefI.

challenge governmental activity." *Stegall*, 653 F.2d at 185; *Doe v. Porter*, 370 F.3d at 560 (same); *Sealed Plaintiff*, 537 F.3d at 190 (same).

No doubt, this case has attracted media scrutiny and curiosity, perhaps in part because of the very fact that Publius is anonymous. But curiosity is not the "public interest" that matters here. The question is whether disguising Publius' identity will "obstruct public scrutiny of the important issues in the case." *Advanced Textile*, 214 F.3d at 1072.

And the answer is that Publius' identity is not relevant to the issues in this case, which are legal questions about the constitutionality of a statute as applied to undisputed facts. Courts have recognized in other cases that, "because of the purely legal nature of the issues presented . . ., there is an atypically weak public interest in knowing the litigants' identities." *Sealed Plaintiff*, 537 F.3d at 190; *Free Speech*, 1999 WL 47310 *2 (same); *Advanced Textile*, 214 F.3d at 1068–69 (allowing anonymity when "[p]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them") (citation omitted). Thus here, as in the *Free Speech* case, "because the particular plaintiffs in this constitutional challenge are essentially interchangeable with similarly situated persons" who might want to engage in similar speech—or, as with Hoskins and others, simply to repost some or all of Publius' post—"there appears little public interest in which particular persons have actually sued" and the "public need not learn plaintiffs' legal names in order to be fully alerted to the legal issues before the court." *Id*. at *3.

In fact, the controversial nature of Publius' political speech cuts in favor of anonymity in the "public interest" balance: "the public may have a strong interest in protecting the privacy of plaintiffs in controversial cases so that these plaintiffs are not discouraged from asserting their claims." *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997). Indulging the State's apparent desire to drag Publius through the mud will not only distract attention from the actual legal issues before the Court—it will also deter other speakers with minority viewpoints from standing up for their First Amendment rights.

The procedural posture of the case also favors Publius' anonymity in the "public interest" balance. The Court has already found that Publius is likely to prevail on the merits of the case. Just as the preliminary injunction context recognizes there is no public interest in enforcing an

unconstitutional law, *see* Preliminary Injunction Oder at 37, so too there is no public interest in hampering the vindication of constitutional rights that are likely being violated. As in *Advanced Textile*, where anonymity was granted to allow plaintiffs to vindicate statutory rights, allowing Publius to use a pseudonym will affirmatively serve the public interest by enabling Publius' claim to go forward and be resolved on the merits. *See Advanced Textile*, 214 F.3d at 1073 ("fear of . . . reprisals will frequently chill [litigants'] willingness to challenge . . . violations of their rights").

### C.  Publius' Anonymity Does Not Prejudice The State's Defense.

"The court must also determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Advanced Textile*, 214 F.3d at 1068. Here, the State will suffer no prejudice if Publius proceeds anonymously. The State had months to prepare for the preliminary injunction motion it knew was coming,[5] yet it never once argued that it needed to know Publius' identity in order to oppose the preliminary injunction, whether on the merits of the claims or otherwise.

That is because the merits here do not turn on Publius' identity or anything personal to Publius. When the State signed on to the Joint Scheduling Report in December 2016, it agreed that "[t]he basic factual issues are uncontested." Dkt. No. 25. Indeed, whether the application of Section 6254.21(c) to Publius' "Tyrant Registry" post is constitutional does not change based on any facts that require Publius' identity. Setting aside the troubling implications of the State's surmising about whether Publius has "multiple felony convictions" or "assassination attempts," Publius' personal history does not impact the merits. (While Publius would not surrender First Amendment rights to speak out even if he/she had a criminal record, Publius affirms in the declaration accompanying this motion that he/she has no criminal record. Publius Decl., ¶ 8. And, if the Court finds it necessary or worthwhile, Publius would disclose his/her identity to the Court under seal so that the Court may verify this fact.)

Publius also claims no harm other than the constitutional violation that the Court has already considered. In short, the State can point to no "individualized accusations" that may

---

[5] The parties started discussing scheduling in August 2016. Duvernay Decl., ¶ 2.

justify unmasking Publius. *Cf. Advanced Textile*, 214 F.3d at 1072 (leaving open possibility of identifying plaintiffs later in proceedings if "necessary" to "refute individualized accusations of FLSA violations").

When the Court asked the parties to report on how they wished to proceed following the preliminary injunction ruling, Plaintiffs' counsel sought to engage the State's counsel on why this case could not go straight to summary judgment. The State's counsel said the State may seek third-party discovery of Wordpress in furtherance of the State's argument that, contrary to the evidence submitted at the preliminary injunction motion, Wordpress did not take down Publius' post in response to the State's demand, and therefore (the theory goes) Publius does not have standing. But no personal facts about Publius will affect that standing argument.[6]

The State's counsel said it may want to inquire further into how Publius obtained the legislators' home addresses, but that does not require disclosure of Publius' identity. (It is also entirely unclear how the method by which Publius obtained the addresses matters, given that the Legislators' home address information is indisputably publicly available, and indeed must be available as a matter of law for "political purposes." Cal. Elec. Code § 2194(a)(3).)

When Plaintiffs' counsel asked the State to confirm what other discovery it thinks it needs, the State's counsel claimed that it needed to depose Publius. Counsel noted that the State was not interested only in whether he or she has a criminal record, but also to "inquire about Publius's background and credibility more generally." Duvernay Decl., Ex. 2. In other words, the State hopes to discredit Publius as a person, despite the absence of any dispute about the facts that form the basis for the constitutional analysis here—at least as they relate to Publius' personal identity. Thus the need for this motion.

///

---

[6] This case thus contrasts with the Establishment Clause cases, where, for instance, anonymous parties challenge a school district's practices and the district seeks to confirm that the families actually live in the district. Such concerns justify partial disclosure, while still shielding plaintiffs' identity from the general public. *See, e.g.*, *Madison Sch. Dist.*, 147 F.3d at 834 n.1 ("district court judge met in chambers with Doe, without defense counsel present, to determine whether she had standing"); *Porter*, 370 F.3d at 561 (allowing disclosure of names and addresses to defense counsel to confirm enrollment status).

## IV.

## CONCLUSION

At the preliminary injunction stage, the State revealed its contempt for Publius' anonymous speech rights when it lamented the supposed "irony if not the hypocrisy, in Publius's insistence that no harm can befall the legislators from his publicly posting their home addresses and telephone numbers on the internet at the same time that he refuses to disclose even his *name* for fear of retribution." Dkt. 20, Opp. to Prelim. Inj. Motion, at 6 n.6 (emphasis in original). But an attempt to resist the forced disclosure of identity is entirely consistent with an attempt to resist forced suppression of speech—both are attempts to preserve the rights of private individuals to speak out, without fear of harassment, retaliation, or (under § 6254.21) having to pay tens of thousands of dollars in attorney fees. California law seeks to coercively suppress speech; and there is no hypocrisy in resisting such speech suppression while trying to preserve one's anonymity. All the factors point in favor of Publius' desire to petition for redress of grievances anonymously, which is entirely consistent with his desire to speak freely.

Dated:  March 29, 2017                By  /s Eugene Volokh
                                          EUGENE VOLOKH
                                          Attorneys for Plaintiffs


                                      BENBROOK LAW GROUP, PC


                                      By  /s Bradley A. Benbrook
                                          BRADLEY A. BENBROOK
                                          Attorneys for Plaintiffs