# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE PUBLIUS and DEREK HOSKINS, <br><br> Plaintiffs, <br><br> v. <br><br> DIANE F. BOYER-VINE, in her official capacity as Legislative Counsel of California, <br><br> Defendant. | 1:16-cv-1152-LJO-SKO <br><br> MEMORANDUM DECISION AND ORDER RE PLAINTIFFS' REQUEST TO ALLOW PLAINTIFF DOE PUBLIUS TO PROCEED PSEUDONYMOUSLY (Doc. 26) |

## I. INTRODUCTION[1]

Plaintiffs Doe Publius ("Publius") and Derek Hoskins bring this civil rights case under 42 U.S.C. § 1983 ("§1983"), challenging California Government Code § 6254.21(c) ("§ 6254.21(c)")[2] under the First Amendment, the Commerce Clause, and 47 U.S.C. § 230 ("§ 230"), against Defendant Diane F. Boyer-Vine, in her official capacity as Legislative Counsel of California. Docs. 1 & 12.

---

[1] Because the Court recounted in detail the factual and procedural background of this case in its previous order addressing Plaintiffs' preliminary injunction motion, *see* Doc. 24 at 2-5, the Court now provides only the background information relevant to the pending matter. The Court incorporates by reference the factual and procedural background outlined in the Court's previous order.

[2] Briefly summarized, under § 6254.21(c), if someone publishes the home address or telephone number of certain officials on the internet, those officials may demand that the posting be removed. The official must make the demand in writing, and must describe the threat or fear for safety the official feels personally or for his or her family who reside at the official's home address. Anyone who receives such a demand must remove it within 48 hours, must takes steps to ensure it is not reposted, and may not communicate the information to anyone through any medium. If the official's home address or telephone number "is made public" because someone posted the information online without the official's consent, the official may seek a court order to have the information removed from the internet. If the court finds that the individual who posted the information online failed to comply timely with the official's demand, then the court must award attorney's fees to the official, regardless of the relief the court orders.

1

Plaintiffs subsequently moved for a preliminary injunction to prevent Defendant from enforcing § 6254.21(c) against them. *See* Doc. 19-1 at 26. The Court determined that Plaintiffs are likely to succeed on their claims that § 6254.21(c) violates the First Amendment as applied to Plaintiffs, and also violates the dormant Commerce Clause as applied to Hoskins. Doc. 24. Accordingly, the Court preliminarily restrained and enjoined Defendant from applying or enforcing § 6254.21(c) against Plaintiffs. *Id.*

On March 29, 2017, Plaintiffs filed their request that the Court issue an order allowing Publius to proceed pseudonymously. Doc. 26. Defendant filed her opposition, Doc. 27, and Plaintiffs replied, Doc. 29. The Court took this matter under submission on the papers pursuant to Local Rule 230(g). Doc. 30. For the following reasons, the Court GRANTS Plaintiffs' request.

## II. **STANDARD OF DECISION**

Under Federal Rule of Civil Procedure 10(a), the title of every complaint must "include the names of all the parties," and a plaintiff's use of a fictitious name may "run[] afoul of the public's common law right of access to judicial proceedings." *Does I through XIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010). Nevertheless, the Ninth Circuit permits parties to proceed anonymously "in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068; *see also United States v. Doe*, 488 F.3d 1154, 1155 n.1 (9th Cir. 2007) ("We are cognizant 'that the identity of the parties in any action, civil or criminal, should not be concealed except in an *unusual case*, where there is a need for the cloak of anonymity'") (emphasis added). The decision of whether or not to allow a party to remain anonymous is within this Court's discretion and will not be reversed unless the Court relies on an erroneous view of the law, makes an erroneous assessment of the evidence, or strikes an unreasonable balance of the relevant factors." *See id.* at 1042 (citing *Advanced Textile*, 214 F.3d at 1069).

### III. ANALYSIS

**A.    Publius' Need for Anonymity**

Publius argues that he has a "compelling need for anonymity" for several reasons. Doc. 26 at 4-8. First, he cites the risk of "harassment, injury, ridicule or personal embarrassment," noting that he has already received hostile messages from third parties on his blog, and that his employer would likely terminate him if persons opposed to this lawsuit were to criticize publicly the employer for its association with Publius. *Id.* at 4-5 (citing *Advanced Textile*, 214 F.3d at 1068); Publius Decl. at ¶¶ 5-6. Second, by this suit, he is challenging the constitutionality of § 6254.21(c), which necessarily discloses that he might have violated or intends to violate § 6254.21(c) —"Publius would prefer *not* to violate the law, which is the reason for filing this challenge now, rather than waiting to be sued." Doc. 26 at 5-6. Therefore, without the mask of anonymity, Publius would risk exposure to the penalties laid out in § 6254.21(c), which potentially include thousands of dollars in attorneys' fees. *Id.* Third, Publius asserts that the First Amendment protects his right to speak anonymously when criticizing the government, noting that he has taken multiple steps to preserve his anonymity while blogging, and that being forced to disclose his identity would eliminate his right to continue engaging in anonymous political speech. *Id.* at 7-8.

Defendant disputes each of these reasons. First, she argues that the potential harassment and economic harm that could befall Publius do not rise to the level of severity required to justify anonymity. Doc. 27 at 5-8. Second, she argues that Publius does not reasonably fear criminal prosecution and that as a matter of practicality, even if Publius remained anonymous in this lawsuit, if a future plaintiff were to sue him for violating § 6254.21(c), the plaintiff would be able to learn Publius' true identity to enforce the monetary judgment pursuant to § 6254.21(c)(2). *Id.* at 8-9. Relatedly, Defendant argues that "the entirely speculative possibility that Publius might choose not to proceed with his or her constitutional challenge … provides no reason to grant anonymity," especially given that Plaintiff Hoskins would presumably remain in the case. *Id.* at 9-10. Third, Defendant argues that the

right to anonymous free speech does not extend to the right to litigate anonymously, suggesting that Publius could continue to speak anonymously through a different pseudonym. *Id.* at 11-12.

The Court agrees with Defendant on two points. First, Publius potentially being discouraged from bringing this lawsuit if denied permission to proceed pseudonymously does not weigh in favor of granting him anonymously. *Jessica K. v. Eureka Schools Dist.*, No. C 13-05854 WHA, 2014 WL 689029, at *2 (N.D. Cal. Feb. 21, 2014) ("That plaintiffs 'may be' unwilling to proceed with this matter is insufficient. 'May be' is too wishy-washy and speculative.".).

Second, the reasonableness of Publius' fear of physical and economic harm is not a sufficient reason to grant him anonymity in light of "the surrounding context and other listeners' reactions to the threats." *Kamehameha*, 597 F.3d at 1044. Defendant correctly points out that Publius has received "only a small number of even arguably threatening online comments, with no indication that anyone actually had the intention to carry them out," and Publius' declaration does not state that he fears physical injury. Doc. 27 at 7. In *Kamehameha*, the Ninth Circuit upheld the district court's decision to deny the plaintiffs' request to proceed anonymously, even though they were minor children who had been the subject of anonymous online threats. 597 F.3d at 1044-45. Noting that courts must "consider the surrounding context and other listeners' reactions to the threats," the Ninth Circuit affirmed the district court's recognition that "many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out," and observed that "plaintiffs had culled only a few comments out of hundreds of anonymous comments regarding this case." 597 F.3d at 1044-45; *see also Doe v. Amazon.com, Inc.*, Case No. C11-1709 MJP, 2011 WL 13073281, at *3 (W.D. Wash. Dec. 23, 2011) (finding that although the plaintiff received some "lewd and harmful messages" regarding her lawsuit, "readers of these comments would likely not perceive them to be actual threats against [the plaintiff], and that the plaintiff's fears were objectively unreasonable.). Nor is the possibility of Publius' termination from his employment a persuasive factor weighing in favor of anonymity. *See Advanced Textile*, 214 F.3d at 1071 (suggesting that "threats of termination and blacklisting are …

typical methods by which employers retaliate against employees who assert their legal rights" and alone do not justify anonymity); *4 Exotic Dancers v. Spearmint Rhino*, No. CV 08–4038 ABC (SSx), 2009 WL 250054 at *2 (C.D. Cal. Jan. 29, 2009) ("[T]he Court does not doubt that [the plaintiffs]' fears of economic retaliation are objectively reasonable and that they are vulnerable to such retaliation … But that does not alter the conclusion that pseudonymity is not necessary given that the feared injury is not extraordinary."); *accord Southern Methodist University Ass'n of Woman Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (vulnerability to retaliation from current employers, prospective future employers and professional association was insufficient to warrant anonymity).

The parties dispute whether Publius' case can be analogized with Establishment Clause cases. The Court agrees with Plaintiffs on the issue. In the cited Establishment Clause cases, courts permitted plaintiffs to proceed anonymously because by filing their suits, the plaintiffs "made revelations about their personal beliefs and practices that [we]re shown to have invited an opprobrium analogous to infamy associated with criminal behavior." *Stegall*, 653 F.2d at 18; *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) ("This suit—challenging a government activity—forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment"); *Doe v. Madison Sch. Dist. No. 231*, 147 F.3d 832, 833 n.1 (1988) ("Doe filed this case using a pseudonym because she feared retaliation by the community"), *vacated on other grounds*, 177 F.3d 789 (9th Cir. 1999) (en banc). Defendant attempts to differentiate these cases on account of the fact that these cases were all brought on behalf of minor children. Doc. 27 at 10. However, the reasoning from these cases regarding the private and sensitive nature of religious beliefs supports justifying anonymity in this case. The Court agrees with Plaintiffs that anonymity in both the Establishment Clause cases and this case is "both part and parcel of the underlying constitutional right," in that the *Stegall*, *Porter*, and *Madison* plaintiffs sought to protect their right to privacy in their First Amendment religious beliefs, and Publius is seeking to protect his First Amendment right to anonymous political speech. Doc. 29 at 4. The Court agrees that "the First Amendment right to express minority political opinions must be just as protected

as the First Amendment right to engage in minority religious practices." *Id.* As a matter of common sense and knowledge, political opinions, like religious beliefs, especially if they are controversial and in the minority, can certainly be a source of social ostracization—a fact not lost on Publius. In his declaration, Publius avers that he blogs anonymously "[i]n order to focus readers on the message—and out of fear of reprisal for being an outspoken advocate for Second Amendment rights in a time when those rights are strongly disfavored by many leaders of California government." Publius Decl., Doc. 26-3 at ¶ 2. Therefore, the Court finds that the Establishment clause cases support Plaintiffs' position.

In evaluating the remaining arguments regarding Publius' risk of prosecution and Publius' First Amendment right to anonymous political speech, the Court has discerned that a foundational issue underlying these arguments is whether or not Publius' "Tyrant Registry" blog post[3] is a "true threat" that is not protected by the First Amendment. "[T]he First Amendment permits a State to ban 'true threats,'

---

[3] On July 5, 2016, in response to the California legislature's gun control legislation, Publius posted the following blog entry, titled "Tyrants to be registered with California gun owners":

> If you're a gun owner in California, the government knows where you live. With the recent anti gun, anti Liberty bills passed by the legisexuals in the State Capitol and signed into law by our senile communist governor, isn't it about time to register these tyrants with gun owners?
>
> Compiled below is the names, home addresses, and home phone numbers of all the legislators who decided to make you a criminal if you don't abide by their dictates. "Isn't that dangerous, what if something bad happens to them by making that information public?" First, all this information was already public; it's just now in one convenient location. Second, it's no more dangerous than, say, these tyrants making it possible for free men and women to have government guns pointed at them while they're hauled away to jail and prosecuted for the crime of exercising
> their rights and Liberty.
>
> These tyrants are no longer going to be insulated from us. They used their power we entrusted them with to exercise violence against us if we don't give up our rights and Liberty. This common sense tyrant registration addresses this public safety hazard by giving the public the knowledge of who and where these tyrants are in case they wish to use their power for violence again.
>
> So below is the current tyrant registry. These are the people who voted to send you to prison if you exercise your rights and liberties. This will be a constantly updated list depending on future votes, and if you see a missing address or one that needs updating, please feel free to contact me. And please share this with every California gun owner you know.
>
> To be fair, the only way for a tyrant to have their name removed from the tyrant registry is to pass laws which repeal the laws that got them added to the list, or upon the tyrant's death. Otherwise, it is a permanent list, even after the tyrant leaves office. The people will retain this information and have access to it indefinitely.

First Amended Complaint ("FAC") at ¶ 17.

… which encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 344 (2003). In her opposition brief, Defendant states that she did not challenge whether the "Tyrant Registry" blog post was entitled to constitutional protection "because no discovery on that issue had yet been conducted." Doc. 27 at 17. However, Defendant now intends "to conduct the necessary discovery with respect to the [true threat] issue, and if supported by facts learned during such discovery, Defendant may argue that Publius' blog post constitutes a 'true threat' that is not entitled to protection under the First Amendment." *Id.* Plaintiffs address the "true threat" issue in a footnote in their reply brief, arguing that although the "Tyrant Registry" blog post "may be crude and offensive to polite society," it cannot be reasonably perceived as seeking to incite violence against California legislators. Doc. 29 at 6 n. 4.

Because this fundamental issue has not yet been fully briefed, the Court is hesitant to make a finding now as to whether the "Tyrant Registry" is a "true threat." Nevertheless, the Court makes the following observations regarding the logical progression of this case. If the "Tyrant Registry" is found to be a "true threat," not only would it be undeserving of First Amendment protection, Publius could potentially be subject to criminal liability pursuant to section 6254.21(b) of the California Government Code, which makes it a misdemeanor for a person to "knowingly post the home address or telephone number of any elected or appointed official … on the internet knowing that person is an elected or appointed official and intending to cause imminent great bodily harm to that individual." In *Advanced Textile*, the Ninth Circuit recognized that anonymity might be justified if a party would be "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." 214 F.3d at 1068 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)). Publius' risk of criminal prosecution under this scenario would therefore weigh in favor of granting him anonymity for the time being. *See id.* On the other hand, if the "Tyrant Registry" is not a "true treat," it would be protected speech under the First Amendment, and unmasking Publius at this time would deprive him of his First Amendment right

to anonymous political speech and inflict upon him a constitutional injury.[4] Although Defendant is correct in pointing out that there does not appear to be any case explicitly extending the right to anonymous political speech to the right to litigate anonymously, the Court agrees with Plaintiffs that the right to anonymous political speech, especially given Publius' established history of speaking anonymously, is "highly relevant to the 'injury' showing" that he must make to demonstrate a compelling need for anonymity. *See* Doc. 29 at 2; *Advanced Textile*, 214 F.3d at 1070 (pseudonyms may be appropriate if "necessary to protect a person from harassment, injury, ridicule, or personal embarrassment"). Publius should not be forced to choose between his right to anonymous political speech and his right to avail himself of the federal courts. Thus, regardless of whether the "Tyrant Registry" is a "true threat" or not, the Court finds that at this stage of the litigation, either the risk of criminal prosecution or Publius' First Amendment rights weigh in favor of permitting Publius to proceed anonymously.

Because the majority of these considerations support Plaintiffs' position, the Court finds that Publius has demonstrated a compelling need for anonymity.

**B.      Prejudice to Defendant**

Plaintiffs contend that Defendant will suffer no prejudice of Publius proceed anonymously, noting that Defendant litigated the preliminary injunction motion without knowing Publius' identity, and that resolving the merits of this case do not require knowing anything about Publius aside from what is already in the record. Doc. 26 at 10. It is Plaintiffs' position that Defendant "hopes to discredit Publius as a person, despite the absence of any dispute about the facts that form the basis for the constitutional analysis here—at least as they relate to Publius' personal identity." *Id.* at 11.

---

[4] Here, the Court is cognizant of the careful steps Publius has taken to preserve his anonymity since he began blogging about "California politics, with a particular emphasis on criminal law, civil rights and liberties, and the right to keep and bear arms secured by the Second Amendment" as "the Real Write Winger." Publius Decl., Doc. 26-3 at ¶ 2. Given the rather specific focus of Publius' blog and the considerable efforts he has taken to safeguard his anonymity, the Court is not persuaded by Defendant's notion that Publius could simply blog under another pseudonym in the future to preserve his First Amendment rights. See Doc. 27 at 11.

Defendant contends that she needs further discovery on several issues at this stage of litigation, including "the fuller context in which Publius' blog posts were made, how Publius actually collected the legislators' personal information for the 'Tyrant Registry,' and Publius' credibility regarding the specific facts as to which he has testified." Doc. 27 at 17. Defendant states that she may use facts learned during discovery to argue that the "Tyrant Registry" constitutes a "true threat"—an inherently factual question that will require Defendant to depose Publius. *Id.* at 18. Additionally, Defendant observes that in *Advanced Textile*, discovery was stayed at the time the district court granted anonymity, and that in this case, discovery has commenced, which weighs against anonymity. *Id.* at 16.

"The court must … determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured to mitigate that prejudice." *Jane Roes 1-2 v. SFBSC Mgmt., LLC.*, 77 F. Supp. 3d 990, 995 (N.D. Cal. 2015) (quoting *Advanced Textile*, 214 F.3 at 1068). Courts have found prejudice for purposes of this analysis where a plaintiff's anonymity interferes with the defendant's ability to address specific allegations against it or is logistically impracticable. *See e.g.*, *Advanced Textile*, 214 F.3d at 1072 ("We recognize that at some later point in the proceedings it may be necessary to reveal plaintiffs' identities to defendants so that defendants may refute individualized accusations of FLSA violations."); *Jessica K*, 2014 WL 689029, at *5 (finding that plaintiffs' anonymity prejudiced defendants because the matter likely "involves extensive discovery directed at third parties, such as school children," and "[i]t would be most impracticable to expect deponents or interviewees—such as classmates who allegedly harassed plaintiffs or witnessed such claimed events—to attend depositions and then keep the contents of such depositions secret … or to keep mum about who they think is accusing them."). Furthermore, "anonymity need not, and should not impede either party's ability to develop its case," given the district court's "'powers to manage pretrial proceedings' to shape discovery and avoid impediments that anonymity might raise," including "issuing limited protective orders allowing the plaintiffs' names to be revealed to significant third parties, in a way that protects the plaintiffs' interests sufficiently, 'without prejudicing the opposing party's ability to

litigate the case.'" *SFBSC*, 77 F. Supp. 3d at 996 (quoting *Advanced Textile*, 214 F.3d at 1069).

Here, at this stage of proceedings, the Court does not find that Defendant is prejudiced by Publius's anonymity. The Court recognizes that Publius' declaration is sparse and that Defendant need not accept it all as true. However, even assuming that Defendant does need to depose Publius to mount a defense that the "Tyrant Registry" is a "true threat,"[5] the Court finds that Defendant is not prejudiced by Publius remaining anonymous throughout the discovery process, given that Defendant's alternative proposal that the Court enter "a protective order under which Defendant [would] be provided with Publius' identity in order to conduct the necessary discovery, including taking Publius' deposition, and permit Publius to use a pseudonym, subject to a future motion by Defendant to reveal Publius' identity based on a material change in circumstances," would appear to address the issues she raises in her opposition. *See* Doc. 27 at 19. In other words, even if Defendant needs to depose Publius and other potential third parties, Defendant has not demonstrated that her defense of this case requires disclosing Publius' identity to nonparties to this suit at this time. *See Advanced Textile*, 214 F.3d at 1069.

**C.    The Public's Interest in Knowing Publius' Identity**

Plaintiffs offer the following arguments regarding the public's interest. First, because Defendant is a government entity, Plaintiffs argue that the public's interest in knowing Publius' identity is lessened, citing several cases that list the presence of a government defendant as a factor for consideration in this analysis. Doc. 26 at 8 (citing *Free Speech*, 1999 WL 47310, at *2; *Stegall*, 653 F.2d at 185; *Porter*, 370 F.3d at 460; *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008)). Second, because Publius' personal identity is not relevant to the merits of this case—which concern only "legal questions about the constitutionality of a statute as applied to undisputed facts"—the public interest is best served by Publius remaining anonymous. Doc. 26 at 9.

---

[5] As noted above, Plaintiffs contend that the "Tyrant Registry" is not a "true threat" as a matter of law. Doc. 29 at 5. It is therefore their position that there is no need for discovery as to Publius' identity. *Id.* However, because the Court declines to reach a determination on this issue, the Court declines to address Plaintiffs' rebuttal of Defendant's "true threat" argument at this time.

In her opposition, Defendant emphasizes that the public's interest generally favors open judicial proceedings. Doc. 27 at 13. In response to Plaintiffs' argument that the presence of a government defendant diminishes the public's interest in knowing an anonymous plaintiff's identity, Defendant cites several cases finding that government defendants weigh against granting anonymity. *Id.* at 14-15 (citing *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d. 724, 730 (W.D. Va. 2012) ("The simple fact that plaintiff sues a governmental identity does not give the court more reason to grant her request for anonymity."); *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (same)). Relatedly, Defendant argues that because Plaintiffs seek to invalidate a statute enacted by duly elected representatives, the public "has a strong interest in knowing the identity of the person looking to strike down the work of its democratically elected representatives." Doc. 27 at 15-16. Defendant further argues that this case is not a pure legal challenge, as her position is that knowing Publius' identity is necessary for her to defend against Publius' as-applied challenge. *Id.*

Upon review of the cases cited by both parties, the Court finds that the case law supports the position of Plaintiffs more than it does of Defendant. Notably, *Pittsylvania*, which Defendant cites, ultimately found that the government defendant factor be accorded "neutral weight" after examining cases that went both ways. 844 F. Supp. 2d at 731. Although the government defendant factor can go either way, here, the fact that Defendant is a government entity tips the balance in Plaintiffs' favor because of the nature of this case—a legal challenge to the constitutionality of a California statute as applied to the content of Publius' speech. *See, e.g.*, *Sealed Plaintiff*, 537 F.3d at 190 (the court must consider "whether, because of the purely legal nature of the issue presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities."); *Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, 2017 WL 818255, at *3 (D. Md. Mar. 1, 2017) (despite the "heightened public interest" in the disclosure of the plaintiffs' identities, concluding that this public interest was reduced because plaintiff's claim was a pure legal challenge to a federal executive order "such that the individual plaintiffs play only a minor role in the litigation"). The Court is not persuaded by Defendant's

argument that it is necessary to reveal Publius' personal identity to litigate the as-applied challenge, which Defendant appears to concede through her alternative proposal, as discussed above. Rather, at this stage of the proceedings, the Court finds that the public's interest in this case would be best served by permitting Publius to proceed anonymously.

## IV. CONCLUSION AND ORDER

After considering the unique facts of this case—namely, the careful steps that Publius has taken to safeguard his anonymity since he began blogging, and Publius' thus far undisputed assertion that the addresses and phone numbers of the legislators were already publicly available when he posted them—it becomes clear that Plaintiffs filed this request to focus the Court's attention on the merits of their case. Publius has demonstrated a compelling need for anonymity, that Defendant is not prejudiced by this anonymity, and that the public's interest would be best served by allowing him to remain anonymous. The Court finds that Publius has satisfied the "high bar for proceeding under a pseudonym" and that deviating from its normal practice for this "rare exception" is warranted. *See Doe v. Ayers*, 789 F.3d 944, 945-47 (9th Cir. 2015). For these reasons, the Court GRANTS Plaintiffs' request, Doc. 26, for Doe Publius to proceed anonymously.

On or before May 31, 2017, the parties shall file a joint status report informing the Court how they wish to proceed.

IT IS SO ORDERED.

Dated: **May 9, 2017**  /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE